**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

DEONDRAE JACKSON,
    *Defendant-Appellant*.

No. 13-50215

D.C. No.
2:12-cr-00510-PSG-1

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
June 4, 2014—Pasadena, California

Filed June 18, 2014

Before: Stephen Reinhardt, John T. Noonan,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Reinhardt;
Concurrence by Judge Murguia

## SUMMARY[*]

### Criminal Law

Reversing a misdemeanor conviction for violating 18 U.S.C. § 701, the panel held that no rational finder of fact could have concluded beyond a reasonable doubt that an identification card the defendant was accused of unlawfully manufacturing or possessing was, as § 701 requires, "of the design prescribed by the head of any department or agency of the United States."

The defendant was a maintenance worker at the Maintenance Center on the Marine Corps Logistics Base in Barstow, California. The panel wrote that although this is not one of the more significant criminal cases to reach this court in recent years, the defendant had little choice but to make every effort to have his conviction set aside because the United States succeeded in obtaining the conviction without proving its case.

Judge Murguia concurred in the opinion's description of the evidence and its determination that no rational finder of fact could have found beyond a reasonable doubt that the defendant's identification card was "of the design prescribed by the head" of the Maintenance Center or the Marine Corps Logistics Base.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Davina T. Chen (argued), Glendale, California, for Defendant-Appellant.

Sharon McCaslin (argued), Assistant United States Attorney; André Birotte Jr., United States Attorney; and Robert E. Dugdale, Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

REINHARDT, Circuit Judge:

I. BACKGROUND

This is not one of the more significant criminal cases to reach this court in recent years. Yet, because the United States succeeded in obtaining the conviction of Deondrae Jackson without proving its case, Mr. Jackson had little choice but to make every effort to have his conviction set aside. Fortunately, for him and the justice system, Mr. Jackson had the benefit of the Federal Public Defender system, which effectively exposed the obvious holes in the government's case. The fine imposed on Mr. Jackson was only $150, which may seem insufficient cause for invoking the might and authority of the United States District Court and the United States Court of Appeals for the Ninth Circuit, but to Mr. Jackson this case is as important as, if not more important than, *Apple Inc. v. Samsung Electronics Co., Ltd.*, 695 F.3d 1370 (Fed. Cir. 2012), *rev'g* 877 F. Supp. 2d 838 (N.D. Cal. 2012), is to those parties. Given the United States

Attorney's Office's insistence on prosecuting his case, Mr. Jackson may well be right, at least from his standpoint.

Mr. Jackson was a maintenance worker at the Marine Corps Logistics Base in Barstow, California. To enter the base, all employees needed a "CAC Card," which a naval police officer called to testify described as the "government card." An additional, yellow card was issued to employees of the Maintenance Center, for the purposes of "quick identification." There was apparently no secret activity undertaken at the Maintenance Center, and the yellow card was required primarily for administrative purposes.

Mr. Jackson apparently had difficulty keeping track of his yellow card. Two or three times, he misplaced or lost it and was required to obtain a new one. The last time Mr. Jackson lost his card, there appears to have been some confusion as to why he was not given a new one. The United States says that it was because he did not have his CAC Card with him, but he had just been issued a new CAC Card that day, after the Base's Chief of Police told the functionary in charge of dispensing cards to give him one. Then the story goes murky; it appears that Mr. Jackson himself may have created a new yellow card, although he insists that it was another functionary who did so.

Now come the weighty legal issues. The United States charged Mr. Jackson with committing the misdemeanor of "manufactur[ing], sell[ing], or possess[ing] any badge, identification card, or other insignia, *of the design prescribed by the head of any department or agency* of the United States for use by any officer or employee thereof, or any colorable imitation thereof, . . . except as authorized under regulations made pursuant to law . . . ." 18 U.S.C. § 701 (emphasis

added). Mr. Jackson appeals his conviction, arguing that there was insufficient evidence that (1) the yellow card was "of the design prescribed by the head of any department or agency of the United States," and (2) he in fact manufactured or possessed an unauthorized yellow card.

Because the evidence introduced at trial does not support the conclusion that the yellow card Mr. Jackson was convicted of manufacturing or possessing was "of the design prescribed by the head of any department or agency of the United States," we reverse without reaching his second claim.

## II. ANALYSIS

At trial, the only evidence introduced as to who, if anyone, had prescribed the design of the yellow card came in the form of testimony by two Base employees.

Clarence Sanchez, a radar technician and the president of the employee union, testified that "when [the badge] first came in or was first introduced, . . . we [the union] discussed this with – you know, with management of what this was supposed to be for." He did not, however, specify whether "management" meant that of the Base or the Maintenance Center,[1] or whether it meant the officer or officers in charge of labor relations, security, or some other Base or Maintenance Center function. He said nothing whatsoever about who, if anyone, "prescribed" the design of the yellow card; in fact, his testimony suggested that the design of the badge was constantly in flux, seemingly "on a day-to-day"

---

[1] While we do not reach the issue, we doubt whether the Maintenance Center – which counsel for the United States stated at argument was the relevant issuing "agency" – is an "agency," as defined in 18 U.S.C. § 6.

basis. The only other testimony even tangentially relevant to who had prescribed the design of the yellow card was the statement of Jose Rafael Amador, a naval police officer responsible for checking identification cards, that "the Maintenance Center came up with" the badge for its employees. This testimony, too, provided no evidence whatsoever that "the head of any department or agency" "prescribed . . . the design" of the yellow card.

The district court clearly erred in finding that the testimony adequately supported the charge. Based on the evidence presented at trial, no rational finder of fact could have concluded beyond a reasonable doubt that the yellow card Mr. Jackson was accused of manufacturing or possessing was, as 18 U.S.C. § 701 requires, "of the design prescribed by the head of any department or agency of the United States."

Mr. Jackson's conviction is reversed, and he need not pay the $150 fine.

**REVERSED.**

MURGUIA, Circuit Judge, concurring:

I concur in the opinion's description of the evidence in the record and its determination that no rational finder of fact could have found beyond a reasonable doubt that Mr. Jackson's yellow card was "of the design prescribed by the head" of the Maintenance Center or the Marine Corps Logistics Base. *See* 18 U.S.C. § 701. Accordingly, I concur in reversing Mr. Jackson's conviction.